1

2

3

4                     UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                              AT SEATTLE

6

7   FEDERAL TRADE COMMISSION and STATE
    OF WASHINGTON,                                    No. C06-298JLR
8
                            Plaintiffs,               ORDER DENYING PLAINTIFF'S
9                                                     MOTION FOR AN *EX PARTE*
    v.                                                TEMPORARY RESTRAINING
10                                                    ORDER
    DEBT SOLUTIONS, INC., et al.,
11
                            Defendants.
12

13

14          This matter comes before the court on the *ex parte* motion of the Federal Trade Commission

15  ("FTC") and the State of Washington for a temporary restraining order (Dkt. # 4).  Plaintiffs claim

16  that Debt Solutions, Inc. and the other Defendants named (collectively, "DSI") have engaged in a

17  fraudulent debt relief scheme aimed at enticing consumers to pay between $400 and $700 for DSI's

18  "services," which often constitute nothing more than DSI advising the consumer to pay more toward

19  his or her credit card bills each month.  Although Plaintiffs present ample evidence to support their

20  allegations that these Defendants violated federal law, they have presented very little evidence

21  demonstrating the necessity for *ex parte* relief.  Accordingly, the Court DENIES Plaintiffs' present

22  *ex parte* motion for a temporary restraining order, but will allow the Plaintiffs papers to remain under

23  seal until March 10, 2006.  Plaintiffs may either choose to  serve the Defendants, allowing them a

24  chance to respond, or submit a second motion in which they provide better evidentiary support for *ex*

25  *parte* relief.

26

ORDER - 1

BACKGROUND

The Defendants are four entities and four individuals.  The entities are Debt Solutions, Inc., DSI Financial, Inc., DSI Direct, Inc., and Pacific Consolidation Services, Inc.  The four individual defendants, Kenneth Schwartz, Jennifer Whalen (a.k.a. Jennifer Krizan), David Schwartz, and Greg Moses are owners, officers, and managers of the DSI entities.  Ms. Whalen, David Schwartz, and Greg Moses are Washington residents.  Kenneth Schwartz resides in Florida.  Some of the DSI entities have facilities in Washington, although they also have (or used to have) facilities in Florida, Georgia, and the Philippines.  (TRO Mot. at 6 n.23).

According to Plaintiffs, the DSI entities operate a consumer debt relief service that they telemarket to nationwide customers.  The entities also operate web sites that promote the same services.  Plaintiffs allege that DSI 's typical business practice is to tell consumers that they will guarantee them at least $2500 in savings on their current debt payments.  Plaintiffs state that DSI agents tell customers that DSI will negotiate substantially lower interest rates with credit card companies and other creditors.  Based on information provided by Plaintiffs, the agents imply that the lowered interest rates are the principal way that the consumer will save money.  Instead, DSI sends the consumer a "financial analysis," which demonstrates that if the consumer pays more than the monthly minimum payments on his or her debts, he or she will save at least $2500 in interest charges.  Plaintiffs accuse DSI of compiling the "financial analysis" without discussing with the consumer how much they are paying each month toward their debts.  Plaintiffs also allege that in virtually all cases, DSI does not obtain a significantly lower interest rate by negotiating with credit card companies, yet charges between $400 and $700 for their service.

Plaintiffs allege other violations, including violations of the law that implements the national do-not-call list, as well as violations of Washington law.  However, the purportedly phony $2500 guarantee, the alleged failure to negotiate lower interest rates, and the allegedly useless financial analysis are the central accusations put forth by Plaintiffs.

The FTC has known about DSI since at least 2004.  In August 2004, the Spokane County Superior Court entered a consent decree on behalf of the State of Washington against DSI barring it from engaging in similar practices in Washington.  The FTC has been tracking DSI at least since the consent decree.  Last week, FTC officials received information from Immigration and Customs Enforcement ("ICE") that David Schwartz, the General Manager of DSI Financial, attempted to cross the Canadian border in a U-Haul truck filled with office equipment and business records.  Mr. Schwartz allegedly told the Canadian border patrol that he had been dispatched to set up a debt relief business in Surrey, British Columbia.  Canada denied entry to Mr. Schwartz because he lacked the proper business permits.  ICE seized some of the business records, which purportedly provide evidence of DSI's ongoing deceptive activities. Based on this information, Plaintiffs assert that DSI's "attempts to move financial documents, computers, and office equipment to Canada are a clear indication that immediate action without notice is necessary to preserve crucial evidence of their fraudulent activities." (Id.).  Plaintiffs also speculate that Defendants "are poised to move their operations, and possibly their funds, offshore."  (Id.)

ANALYSIS

I. Legal Standard for Ex Parte Relief

Under Fed. R. Civ. P. 65(b), an *ex parte* temporary restraining order can issue only if:

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

(Fed. R. Civ. P. 65(b)). The FTC has also invoked 15 U.S.C. § 53(b) (also known as Section 13(b) of the FTCA), which permits the FTC to obtain injunctive relief.  See FTC v. H. N. Singer, Inc., 668 F.2d 1107, 1111 (9th Cir. 1982) (discussing court's equitable power under FTCA). The section provides that when the FTC has reason to believe that a violation of the FTCA is occurring, and that enjoining the violation pending final relief is in the public interest, it may sue in a district court.  15

1  U.S.C. § 53(b).  The district court can enter injunctive relief after "weighing the equities and

2  considering the Commission's likelihood of ultimate success, [and whether] such action would be in

3  the public interest." Id.[1]   The statute excuses the FTC from demonstrating irreparable harm.  FTC v.

4  Affordable Media, LLC, 179 F.3d 1228, 1233 (9th Cir. 1999).  In deciding whether to enter

5  injunctive relief, the court need only "determine the likelihood that the Commission will ultimately

6  succeed on the merits" and "balance the equities."  Id. (quoting FTC v. Warner Communications,

7  Inc., 742 F.2d 1156, 1160 (9th Cir. 1984)).

8      The Court has found nothing in the FTCA or case law, however, that directly addresses

9  whether the FTCA relaxes the standard for granting *ex parte* relief.  While section 13(b) permits

10  injunctive relief, see Affordable Media, 179 F.3d at 1232, the Court has found no precedential

11  authority relieving the FTC of its obligation to satisfy Fed. R. Civ. P. 65(b) when seeking *ex parte*

12  relief.  Plaintiffs claim that this court entered an *ex parte* TRO under similar circumstances in Case

13  No. C01-1610P, but they provide no documentation to support this claim.  Given the lack of

14  authority on this subject, the Court holds that Section 13(b) does not excuse the FTC from

15

16

17  [1]The full text of 15 U.S.C. § 53(b) is as follows:
(b) Temporary restraining orders; preliminary injunctions.

18      Whenever the Commission has reason to believe--
(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

19      (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint

20      is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public--

21   the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the

22  Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the

23  temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: Provided further, That in proper cases the Commission may seek, and after proper proof, the court

24  may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code. In addition, the court

25  may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether

26  venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

ORDER - 4

demonstrating under Rule 65(b) that it (or the public) would suffer harm if the Defendants were given notice and an opportunity to respond. Here, the Court finds that Plaintiffs have not met this burden.

II.. Analysis of the FTC's Motion

The FTC has not demonstrated any urgency in stopping the Defendants from carrying on their fraudulent enterprise.  Although the FTC has provided copious evidence of Defendants' alleged deceptive practices, the evidence is relatively stale.  It consists of evidence obtained before the August 2004 consent decree, a series of depositions from last summer, and a collection of affidavits from consumers dated in November and December of last year.  The Court's initial review of Plaintiffs' evidence suggests that they  may have a strong case on the merits, but not a strong case for acting without notice to the Defendants.

The only new evidence presented by Plaintiffs is an affidavit from Edward Moore, an ICE Agent. (Pl's Ex. 34).  Agent Moore received a call from the Canadian Border Patrol ("CBP") on March 1, 2006.  The CBP had just intercepted Mr. Schwartz in his U-Haul and denied him entry to Canada because he lacked a proper permit.  Agent Moore contacted Mr. Schwartz in a holding area and interviewed him about his purpose for entering Canada.  Mr. Schwartz identified Defendant Whalen as his employer, and stated that he had been sent to start a credit counseling service on her behalf.  Mr. Moore searched the U-Haul and found several filing cabinets and boxes of business records.  He found client files with credit card numbers as well as records of large deposits to Ms. Whalen's bank accounts.  Mr. Schwartz admitted to Agent Moore that the Washington Attorney General had investigated DSI previously, and gave him the name of Jack Zurlini, the Assistant Attorney General on the case.  Because it was after normal business hours, Agent Moore could not reach Mr. Zurlini.  Agent Moore seized all documents that he believed were of evidentiary value.  He released Schwartz, and contacted Mr. Zurlini the next day. Other than Mr. Moore's affidavit, there is no evidence of any kind revealing an exigent circumstance or other basis for action without notice.

Plaintiffs contend that "[i]f Defendants were to learn of this action and evade service, it would irreparably harm Plaintiffs' ability to secure effective final relief for injured purchasers."  (TRO Mot.

at 29.)  However, they provide no evidence for this proposition other than Agent Moore's affidavit, which does not mention the possibility that Defendants are expatriating funds.  One attempt by a Defendant in this action to travel to Canada does not provide sufficient evidence that the entire DSI network is engaged in expatriating funds, especially when it appears that Mr. Schwartz was up front with Agent Moore regarding the previous investigation against DSI.  Moreover, there is no allegation that the organization attempted an expatriation of funds during the previous investigation or that DSI acted less than cooperatively during that time.  Entering an order against a party before giving it a chance to respond to the charges against it is a use of judicial power that the Court takes very seriously.  For this reason, the Court ORDERS Plaintiffs to either serve their materials on the Defendants in this matter or to present the Court with  more substantial evidence regarding Plaintiffs' suspicions that Defendants are or would attempt to expatriate funds.

**Conclusion**

On this record the Court DENIES *ex parte* relief, because the evidence purportedly necessitating court action without notice is insufficient.  The Court ORDERS the Plaintiffs to either serve the Defendants with the documents that they have already filed in this matter, or to make a second attempt at justifying *ex parte* relief.  The Court emphasizes that Plaintiffs need not provide additional evidence of violations of the FTCA, but instead should focus on providing evidence showing that Defendants individually or as corporate officers will dissipate or expatriate their assets if they receive notice of this action.  The court has broad power to fashion equitable relief under the FTCA, see Singer, 668 F.2d at 1111-12, but the court should not exercise that power without notice to the Defendants absent a stronger and more particularized showing of necessity.

The Clerk is directed to send a copy of this Order to all counsel of record.

Dated: March 7 , 2006.

Marsha J. Pechman
United States District Judge

ORDER - 6